The Honorable James L. Robart

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LYNN NUNNALLY,<br><br>    Plaintiff,<br><br> v.<br><br>XO COMMUNICATIONS, a Delaware Corporation; ABC CORPORATION and JOHN DOES 1-10,<br><br>    Defendants. | No. C07-1323JLR<br><br>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>**Note on Motion Calendar:**<br>**December 12, 2008**<br>**Oral Argument Requested** |

## I. INTRODUCTION AND STATEMENT OF RELIEF REQUESTED

Defendant XO Communications seeks summary dismissal of Plaintiff Lynn Nunnally's claim for constructive discharge in violation of public policy.[1] Nunnally resigned from XO approximately eleven months after calling XO's Ethics Hotline. She complained to the Hotline that, in a few instances, XO's local sales representatives were counting orders as complete before meeting all the technical requirements for booking them. The essence of Nunnally's claim is that her co-workers learned that she called the Hotline and then treated her differently and made her working conditions so intolerable that she was forced to resign. While XO believes that Nunnally's complaint to the Hotline involved matters too minor to establish the

---

[1] XO believes that Plaintiff's second claim for unpaid wages will be dismissed by the time of the summary judgment hearing by agreement of the parties.

MOTION FOR SUMMARY JUDGMENT - 1
DWT 12055944v2 0060350-000020

Davis Wright Tremaine LLP
LAW OFFICES
1800 Bellevue Place · 10500 NE 8th Street
Bellevue, Washington 98004-4300
(425) 646-6100 · Fax: (425) 646-6199

"public policy" element of her claim, the simpler reason to grant this Motion is that the petty slights from co-workers upon which Nunnally bases her claim cannot amount to constructive discharge.

After Nunnally's Hotline complaint, her base pay, benefits, job function, supervisor, work location and other basic terms all remained the same or improved. Nunnally admits that no one at XO ever asked her or told her to quit, or told her that she was going to be fired. To support her constructive discharge claim, Nunnally alleges incidents such as a co-worker being "snippy" to her, another not offering her a muffin, and other incidents of a similar nature. She also focuses on a verbal counseling she received five months after her complaint and six months before she resigned asking her to notify her supervisor if she was going to miss scheduled meetings. XO told Nunnally this mild counseling would not even go in her personnel file. For the next six months, Nunnally received no disciplinary action or other performance counseling. On these unremarkable facts, Nunnally cannot show that XO orchestrated a campaign to force her to quit, and her constructive discharge claim fails.

In addition, Nunnally fails to properly state a claim for wrongful termination in violation of public policy. Her claim is an improper appeal of her prior administrative Sarbanes-Oxley whistleblower retaliation complaint. That statute establishes the exclusive remedy for her retaliation complaint. The Department of Labor/OSHA investigated her complaint and found no basis for her claims. She failed to timely object to the Department of Labor's findings, foreclosing any other action. She cannot now overcome her abandonment of that process by re-casting the retaliation allegations as a tort claim of wrongful discharge.

For all these reasons, XO respectfully requests summary dismissal of this claim.

MOTION FOR SUMMARY JUDGMENT - 2
DWT 12055944v2 0060350-000020

## II.    STATEMENT OF FACTS

### A.    The Parties

#### 1.    XO Communications

XO is a publicly-traded nationwide provider of voice and data telecommunication services to businesses.  Declaration of Charles Wilcox ("Wilcox Decl."), ¶ 2.  In the first quarter of 2005, XO's revenues were approximately $361 million.  *Id*.  XO does business in more than 75 major metropolitan markets.  *Id*.  XO maintains an office in Seattle focused on sales and technical support in this region.  *Id*.  The Seattle office does not prepare any quarterly or annual financial statements or other financial information that is disclosed to the SEC, investors, or shareholders.  *Id*.  XO's financial reporting and SEC filing statements are performed at its corporate headquarters in Reston, Virginia.  *Id*.

#### 2.    Plaintiff Lynn Nunnally

XO (then known as Nextlink Communications, Inc.) hired Nunnally in May 2000 as a Technical Sales Consultant.  She was promoted to the position of Senior Sales Engineer in 2004.  Declaration of Kelly Benton ("Benton Decl."), ¶ 2; Nunnally Dep., 85:11-86:1; the excerpts from plaintiff's deposition are attached to the Declaration of G. Hendershott ("Hendershott Decl.") as **Exhibit A**.  Regardless of title, Nunnally's "Sales Engineer" duties remained relatively constant throughout her employment.  Nunnally Dep., 75:4-16.  Her duties included assisting the sales representatives to make sales, reviewing orders to be sure they were technically feasible to install for the customer, and making sure contracts and other documents were signed before "approving" the order so it could be "booked" at the local level.  Benton Decl., ¶ 2.  In essence, her role was to "scrub" every order to make sure that it was accurate and would be trouble-free.

Nunnally has no education beyond high school, no training in accounting standards, and she is unfamiliar with the laws that regulate the reporting of sales and/or revenue orders.  Nunnally Dep., 89:14-20; 112:15-22; 120:1-19.  Nunnally (and her co-workers) never prepared

MOTION FOR SUMMARY JUDGMENT - 3
DWT 12055944v2 0060350-000020

Davis Wright Tremaine LLP
LAW OFFICES
1800 Bellevue Place · 10500 NE 8th Street
Bellevue, Washington 98004-4300
(425) 646-6100 · Fax: (425) 646-6199

any financial statements, SEC filings, or shareholder communications for XO. Nunnally Dep., 77:14-79:14. Nunnally was never a salesperson and was unfamiliar with the XO compensation plan for salespersons. Benton Decl., ¶ 3; Nunnally Dep. 306:7-15.

### B. Nunnally Complained to XO's Ethics Hotline in February 2005

On February 16, 2005, Nunnally complained to XO's in-house counsel in Seattle and then to XO's Ethics Officer (Charles Wilcox) that approximately four sales orders had been processed outside of XO's regular procedures (i.e. sales representatives were attempting to "push through" orders for end-of-month booking before meeting the technical requirements). Wilcox Decl., ¶ 3; Nunnally Dep., 190:15-24. The sales orders involved small amounts of revenue (less than $13,000 per month) that had no material impact on XO's financial reporting to shareholders. *Id*. Nunnally asserted her complaint shortly after one of Nunnally's co-workers raised concerns about her job performance. Nunnally Dep., 146:12-148:17.

#### 1. XO Promptly Investigated Nunnally's Complaint

In response to Nunnally's call to the Hotline, XO, through its outside legal counsel, hired a third party, Protiviti, to investigate her allegations. Wilcox Decl., ¶ 4. Protiviti reviewed order documentation and e-mails and interviewed over a dozen employees. *Id*. In March 2005, Protiviti issued its findings. The report itself is a privileged work product. *Id*.

While the complete results of the investigation were privileged, XO advised Nunnally that the investigation had been completed and thanked her for bringing the issues forward. Wilcox Decl. ¶ 5. Wilcox also summarized the results of the investigation to the Seattle Branch Manager. Wilcox Dec. ¶ 6. The investigation did not result in any changes in reporting sales to shareholders or the public. Nor did it result in any changes to XO's prior accounting of sales. *Id*. No employees were disciplined for the sales that Nunnally described in her complaint to the Hotline. *Id*. The total amounts of transactions at issue were minor in relation to XO's revenue. *Id*. XO received no other allegations of improper order processing from any other employee. *Id.*

MOTION FOR SUMMARY JUDGMENT - 4
DWT 12055944v2 0060350-000020

Davis Wright Tremaine LLP
LAW OFFICES
1800 Bellevue Place · 10500 NE 8th Street
Bellevue, Washington 98004-4300
(425) 646-6100 · Fax: (425) 646-6199

### C. Nunnally Complained of Retaliation by Co-Workers

At the end of March 2005, Nunnally complained that she was being retaliated against by her coworkers for calling the Ethics Hotline.[2] Benton Decl., ¶ 4 and Exhibit 1 thereto. Nunnally complained that: (1) one of the Sales Managers and the Account Executives on her team were being "snippy" to her; (2) certain Account Executives did not seek assistance from her, but instead sought assistance from one of Nunnally's co-workers (Andrea Told), despite the fact that Nunnally was formally assigned to help; and (3) Angela Thomas (a/k/a Angela Bender) had removed a file from Nunnally's desk and responded in a curt way when Nunnally confronted her. *Id*. Nunnally also complained that an Account Executive offered other employees a bagel but did not offer her one. *Id*; Nunnally Dep., 154:1-15. Nunnally also believed that she was retaliated against when she was not offered a muffin by another co-worker. Nunnally Dep., 151:24-152:25.

Following interviews with the Seattle office employees, XO's Human Resources Representative determined that the other employees Nunnally identified in her complaint did not know that Nunnally had filed the original complaint. XO concluded that there was no retaliation against Nunnally. Benton Decl., ¶ 5 and summary of investigation dated April 25, 2005, attached as Exhibit 2 thereto. Nunnally admitted that she did not know if other XO employees knew the source of the investigation or how the investigation took place. Nunnally Dep., 157:15-20; 170:5-13; 172:8-13.

After her allegations of retaliation were investigated, Nunnally continued working at her position and continued to receive positive performance reviews. Benton Decl., ¶ 6 and Exhibit 3 thereto. At one point, XO moved the location of several sales engineers, including Nunnally, closer to other employees with whom they worked in July 2005. Benton Decl., ¶ 7 and Exhibit 4 thereto. Nunnally promptly objected, and she returned to a location she preferred. *Id*. On

---

[2] Neither the Protiviti investigators nor XO's Ethics Officer told Nunnally's co-workers that Nunnally called the Hotline. Subsequent internal investigators responding to Nunnally's retaliation complaints concluded that the co-workers she complained about at the time did not know who called the Hotline.

MOTION FOR SUMMARY JUDGMENT - 5
DWT 12055944v2 0060350-000020

July 22, 2005, Nunnally's supervisor gave her a verbal warning for missing meetings without notifying her supervisor and other minor issues. Benton Decl., ¶ 8; a copy of a written summary of the verbal warning is attached as Exhibit 5 thereto. The verbal warning was not made part of Nunnally's personnel file, and no further discipline followed. Benton Decl., ¶ 9.

### D. Sarbanes-Oxley Whistleblower Complaint

On July 28, 2005, Nunnally filed a whistleblower complaint with OSHA, once again stating that she believed she had been retaliated against for filing her initial complaint with XO's Ethics Hotline. Benton Decl., ¶ 10; a copy of the complaint is attached as Exhibit 6 thereto. Nunnally's complaint was based on the employee protection provisions of Title VIII of the Sarbanes-Oxley Act of 2002 (referred to herein as "Sarbanes-Oxley"). The U.S. Department of Labor has jurisdiction over Sarbanes-Oxley complaints, and OSHA investigates allegations made by whistleblowers under the Act. Her OSHA claim alleged retaliation based on the following: (1) a verbal warning issued to her on July 22; (2) unfriendly treatment by her co-worker, Angela Thomas (a/k/a Bender), and more subtle acts by other Account Executives, Albena Ingalsbe and Dylan Fraser; (3) re-assignment of certain Account Executives to Sales Engineers; and (4) the placement of Nunnally's cubicle near her supervisor's office. OSHA investigated the matter and concluded that no retaliation had occurred, confirmed by its letter dated April 6, 2006 providing its preliminary findings and order. Benton Decl., ¶ 11; a copy of the OSHA determination letter is attached as Exhibit 7 thereto. *Id*. Nunnally did not appeal the decision, nor did she pursue civil litigation in the manner required under the Sarbanes-Oxley Act. Benton Decl., ¶ 12; Hendershott Decl., ¶ 3.

### E. Nunnally's Compensation and Other Fundamental Aspects of Her Position Were Not Reduced After She Called the Hotline

Following her call to the Ethics Hotline and her OSHA complaint, Nunnally's compensation was not reduced, and her benefits remained the same. Benton Decl., ¶ 13. She remained Senior Sales Engineer and was never demoted. *Id*; *see also* Nunnally Dep., 75:3-16.

MOTION FOR SUMMARY JUDGMENT - 6
DWT 12055944v2 0060350-000020

Nunnally continued to receive generally positive performance reviews after she called the Ethics Hotline. Benton Decl., Exhibit 7. She received only one caution (in mid-July 2005) and never received any other disciplinary warning or caution of any kind. Nunnally admits that no one at XO ever told her that she was going to be terminated or that she should resign. Nunnally Dep., 205:17-206:6.

### F. Nunnally's Resignation

On January 12, 2006, Nunnally resigned from XO to accept a position at Symetra Financial Corporation. Nunnally Dep., 26:2-9; 125:18-126:6; Benton Decl., ¶ 14.

### III. EVIDENCE RELIED UPON

XO relies upon the Declarations of Charles Wilcox, Kelly Benton, and Gregory Hendershott, and the exhibits thereto submitted herewith, along with the pleadings and records on file in this action.

### IV. AUTHORITY AND ARGUMENT

Nunnally claims that XO wrongfully constructively discharged her in violation of public policy. Complaint ¶¶3.1 – 3.8. She alleges that XO forced her to resign in retaliation for engaging in protected activity, namely her internal complaint to the Ethics Hotline and her complaint to OSHA. *Id*. She claims that her complaints were protected under the whistleblower provisions of the Sarbanes-Oxley Act, 18 USC 1514A. *Id*. at ¶¶3.2 – 3.4. Nunnally's claim must be dismissed because either: (1) she cannot demonstrate that conditions were so intolerable that they rise to the level of a constructive discharge; (2) she cannot establish the other elements of a wrongful termination claim; or (3) she cannot pursue a common law public policy claim because she failed to pursue her claim through the established and exclusive remedy created by Sarbanes-Oxley.

MOTION FOR SUMMARY JUDGMENT - 7
DWT 12055944v2 0060350-000020

Davis Wright Tremaine LLP
LAW OFFICES
1800 Bellevue Place · 10500 NE 8th Street
Bellevue, Washington 98004-4300
(425) 646-6100 · Fax: (425) 646-6199

### A. Nunnally's Claim Fails Because She Cannot Show XO Made Conditions so Intolerable That She Was Forced to Resign

Nunnally's claim for termination in violation of public policy should be dismissed because she cannot establish a constructive discharge.[3] Plaintiff resigned to take another job, and the workplace slights she alleges do not create the intolerable conditions necessary for the tort she asserts. To prevail, she must prove that she was forced to quit or her working conditions became unbearable (to a reasonable person).

Nunnally resigned from her position at XO to take another position at Symetra Financial Group. Nunnally Dep., 26:2-9; 125:18-126:6. Resignations are presumed to be voluntary. *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 638, 700 P.2d 338, 343 (1985) ("A voluntary resignation occurs when an employee abandons the employment because of a desire to leave, including such a desire motivated by a dissatisfaction with working conditions."); *Sneed v. Barna*, 80 Wn. App. 843, 849, 912 P.2d 1035, 1038 (1996) ("a resignation is presumed to be voluntary, and it is incumbent upon the employee to introduce evidence to rebut that presumption").

To sustain a constructive discharge claim, a plaintiff must introduce evidence that an employer made working conditions "**intolerable**" and thereby **forced** an employee to quit. *Martini v. Boeing Co.*, 137 Wn.2d 357, 366 n.3 (1999); *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn.App. 630, 631–32 (1985).[4] The test for constructive discharge is "whether working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have been compelled to resign." *Sneed v. Barna*, 80 Wn. App. 843, 849 (1996). An employee must prove either "aggravating circumstances" or a "continuous pattern of discriminatory treatment." *Id* at 850.

---

[3] The summary judgment standard is well known and will not be recited here.

[4] Washington state law applies to plaintiff's constructive discharge claim because she does not base her claim on a federal antidiscrimination statute. *Wallace v. City of San Diego*, 479 F.3d 616, n.3 (9th Cir. 2007).

MOTION FOR SUMMARY JUDGMENT - 8
DWT 12055944v2 0060350-000020

Frustration or dissatisfaction with an employee's job alone cannot sustain a claim of constructive discharge. Summary judgment is appropriate if an employee cannot show extreme and pervasive conduct by the employer:

> We hold as a matter of law that these allegations do not evidence the "aggravating circumstances" or "continuous pattern of discriminatory treatment" required to support a constructive discharge claim. Sneed received the same pay as she did when a principal; worked as Administrator for a relatively short period of time; and was asked to help register students on opening day, which by her own admission was not an unprecedented request. The other allegations, while evidencing some degree of frustration, do not rise to the level of being so difficult or unpleasant that a reasonable person in Sneed's shoes would have felt compelled to resign. Sneed's argument fails.

*Sneed v. Barna*, 80 Wn. App. 843, 849 (1996).

First, Nunnally cannot identify any extreme or aggravated circumstances related to her employment or any pattern of discrimination. The specific instances of improper conduct do not rise to constructive discharge. At most, many of Nunnally's complaints reflect unfriendly or indifferent treatment by her co-workers. The failure to offer her a muffin and a bagel cannot establish an extreme or hostile environment. Nunnally Dep., 151:1-152:25. One incident of a co-worker raising her voice does not demonstrate any pattern. Nunnally Dep., 164:21-166:1. In fact, none of Nunnally's supervisors yelled at her or otherwise threatened or intimidated her. Nunnally Dep., 166:16-22. Nunnally's allegation that she was moved closer to supervisors to harass her also fails for several reasons, including that she admits that she was quickly moved back to her original location. Nunnally Dep., 226:1-228:10. In fact, none of her allegations reflect extreme conditions that would force her to leave the job. Following one minor verbal counseling, Nunnally received no further counseling or discipline for the final six months of employment. Benton Decl., ¶ 13.

Second, Nunnally fails to show any link between any alleged hostile conduct and her eventual resignation in January 2006. Nunnally identified perceived slights and "snippy" comments in the spring of 2005 and other problems (cubicle move and reassignment) again in

MOTION FOR SUMMARY JUDGMENT - 9
DWT 12055944v2 0060350-000020

Davis Wright Tremaine LLP
LAW OFFICES
1800 Bellevue Place · 10500 NE 8th Street
Bellevue, Washington 98004-4300
(425) 646-6100 · Fax: (425) 646-6199

July 2005 (complaint to OSHA).  Benton Decl., Exhibits 2, 4 and 6.  Significantly, however, Nunnally identified no alleged intolerable conduct between July 2005 and her resignation in January 2006.  Nunnally Dep., 220:1-14.  All of the incidents of alleged hostile or unfavorable treatment occurred prior to the end of July 2005, when she filed her OSHA complaint.

Nunnally must establish that conditions were intolerable or that she was forced to resign.  However, Nunnally's continued employment at XO from July 2005 for another seven months undermines her claim that conditions at XO were intolerable.  Nothing changed in the last months of 2005 or January 2006 that reflects a deteriorating or impossible working situation.  Nunnally Dep., 220:1-14.  There was no demotion, performance plan, poor evaluation, threat, shout, unreasonable demand, or offensive conduct that triggered Nunnally's resignation.  The alleged wrongful conduct that Nunnally identified took place between March and July 2005 (even the earlier 2005 acts do not amount to constructive discharge).  She continued working without incident for (at least) six more months.   When considering constructive discharge under federal statutes, the Ninth Circuit has held that continuing to work for five months after alleged discrimination or retaliation precludes a finding of constructive discharge.  *See e.g., Poland v. Chertoff*, 494 F.3d 1174, 1185 (9th Cir. 2007) (employee continuing to work for five months after a transfer to a new position was a key factor in court deciding that no constructive discharge occurred); *Hardage v. CBS*, 427 F.3d 1177, 1184-85 (9th Cir. 2005) (five month delay in employee's resignation after alleged sexual harassment defeats constructive discharge claim).  In short, the court can find as a matter of law that a reasonable person would not have found the working conditions so intolerable as to compel a resignation.

### B.  Nunnally Cannot Demonstrate the Basic Elements of a Wrongful Discharge in Violation of Public Policy Claim.

Even if Nunnally could establish constructive discharge (which she cannot), her public policy termination claim still fails.  Washington law governs a claim for wrongful discharge in

MOTION FOR SUMMARY JUDGMENT - 10
DWT 12055944v2 0060350-000020

Davis Wright Tremaine LLP
LAW OFFICES
1800 Bellevue Place · 10500 NE 8th Street
Bellevue, Washington 98004-4300
(425) 646-6100 · Fax: (425) 646-6199

1  violation of public policy. *Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 343 (9th Cir. 1996). It

2  is well established that an at-will employee can be terminated for any reason "absent a contract

3  or narrow exception where the discharge violates a clear mandate of public policy." *Domingo*

4  *v. Boeing Employees Credit Union*, 124 Wn. App. 71, 85, 98 P.3d 1222, 1229 (2004). The

5  cases addressing the claim generally involve situations where employees are fired for refusing

6  to commit an illegal act, for performing a public duty, for exercising a legal right or privilege or

7  for engaging in actual whistleblowing activity. *See, e.g., Ellis v. City of Seattle,* 142 Wn.2d

8  450, 461, 13 P.3d 1065, 1071 (2000) (public policy implicated where employee was fired for

9  refusing to bypass a fire alarm); *Gardner v. Loomis Armored Inc.,* 128 Wn.2d 931, 944-945,

10  913 P.2d 377, 383-384 (1996) (public policy violated when an employee who broke company

11  rule to save a woman's life was discharged). The instant action does not arise from any of

12  these types of situations.

13  The public policy claim must be supported by evidence of (1) a clear public policy; (2)

14  that discouraging plaintiff's conduct would jeopardize the public policy (the "jeopardy"

15  element); (3) public policy-linked conduct caused the dismissal (the "causation" element) and

16  (4) an absence of justification from the employer. *Korslund v. Dyncorp Tri-Cities Services,*

17  *Inc.*, 156 Wn.2d 168, 178, 125 P.3d 119, 125 (2005); *Fosmo v. State Dept. of Personnel*, 114

18  Wn.App. 537, 540-541, 59 P.3d 105, 107 (2002). Washington courts have "interpreted the

19  cause of action narrowly." *Reninger v. State Dept. of Corrections*, 134 Wn.2d 437, 446, 951

20  P.2d 782, 787 (1998). Plaintiff's claim fails to meet that narrow exception to the employment-

21  at-will doctrine because plaintiff (1) failed to pursue other available remedies and (2) there is

22  no nexus between her resignation and her internal call to the Ethics Hotline or OSHA

23  complaint. Moreover, Nunnally's complaints about the sales representatives with whom she

24  worked involved very minor amounts of money that did not implicate shareholder or

25  accounting fraud concerns (approximately $37,000 in sales our of $361 million total sales in

26  the relevant quarter) that might support a public policy.

27

MOTION FOR SUMMARY JUDGMENT - 11
DWT 12055944v2 0060350-000020

Davis Wright Tremaine LLP
LAW OFFICES
1800 Bellevue Place · 10500 NE 8th Street
Bellevue, Washington 98004-4300
(425) 646-6100 · Fax: (425) 646-6199

### 1. The Public Policy Tort Claim Must Be Dismissed Because Plaintiff Had Other Available Remedies for Her Retaliation Claim.

Washington courts consistently hold that where, as here, other remedies are available to address the alleged public policy violation, the plaintiff cannot demonstrate the "jeopardy element" (that discouraging the plaintiff's conduct would jeopardize the public policy) of the prima facie case.  In those instances, the public policy claim is dismissed.  *Korslund v. Dyncorp Tri-Cities Services, Inc.*, 156 Wn.2d 168, 182-183, 125 P.3d 119, 126-127 (2005); *Hubbard v. Spokane County*, 146 Wn.2d 699, 713, 50 P.3d 602, 609 (2002) (same); *Gardner,* 128 Wn.2d at 945, 913 P.2d at 384 (same).

Where other remedies, including federal remedies, exist, courts will not extend the tort of wrongful discharge in violation of public policy:

> Here, however, the question is not whether the legislature intended to foreclose a tort claim, but whether other means of protecting the public policy are adequate so that recognition of a tort claim in these circumstances is unnecessary to protect the public interest . . . We conclude that the remedies under the ERA are adequate to protect the public policy on which the plaintiffs rely.  Therefore, as a matter of law, Korslund's and Miller's claims of wrongful discharge in violation of public policy fail.

*Korslund*, 156 Wn.2d at 183 (remedies under federal Energy Reorganization Act sufficient to protect public interest; plaintiff's claims of wrongful discharge in violation of public policy rejected); *Plemmons v. U.S. Bancorp*, 2006 WL 290557 at *5-6 (W.D. Wash. February 7, 2006) (remedies under federal Truth in Lending Act sufficient to protect public interest; plaintiff's claims of wrongful discharge in violation of public policy rejected).

Here, plaintiff could, and did, file a charge of retaliation under Sarbanes-Oxley.  In response to a retaliation claim under Sarbanes-Oxley, the Department of Labor (through OSHA) investigates the charge.  If a party disagrees with the OSHA findings and order, an appeal can be made to an Administrative Law Judge and then to a Department of Labor Review Board.  *See* 29 C.F.R. § 1980.110, 112.  A party can also seek redress under Sarbanes-Oxley by filing a civil suit only if OSHA does not conclude its investigation within 180 days.  *See* 18

MOTION FOR SUMMARY JUDGMENT - 12
DWT 12055944v2 0060350-000020

1  U.S.C.A. § 1514A, (b)(1)(B).  This procedure provides a remedy "adequate to protect the
2  public policy on which [Nunnally relies.]"  (quoting *Korslund*, 156 Wn. 2d at 183)  As a result,
3  the tort of wrongful discharge in violation of public policy is unnecessary to protect that public
4  policy, and the claim must fail.

5  Recently, a Wisconsin court faced the same issue and rejected a public policy tort claim
6  under Wisconsin law, which is materially identical to Washington law in this area.  *Repetti v.*
7  *Sysco Co.*, 300 Wis.2d 568, 577, 730 N.W.2d 189, 193 (Wis. 2007) (plaintiff's state law claim
8  for wrongful discharge in violation of public policy failed because plaintiff "could have availed
9  himself of the Sarbanes-Oxley protections and relief, but chose not to do so.")  The court
10 analyzed the elements of Wisconsin's tort claim of wrongful discharge (which are virtually
11 identical to Washington law) and concluded that the tort claim could not be a substitute for the
12 statutorily created remedy under the Sarbanes-Oxley Act.

13 The same rationale is even more important in the present case because Nunnally availed
14 herself of the Sarbanes-Oxley process (while the plaintiff in the *Repetti* matter had not done
15 so).  Now she seeks the proverbial second bite at the same apple.  Here, OSHA investigated and
16 dismissed Nunnally's whistleblower retaliation charge.  Benton Decl., Exhibit 7.  Nunnally
17 never appealed the OSHA decision nor filed a civil lawsuit to pursue her Sarbanes Oxley
18 retaliation claim.  Any public policy concern raised by Nunnally has been fully investigated
19 (and dismissed).  Nunnally should not be allowed to resuscitate her failed claims by recasting
20 them as a common law tort.

21  **2.  Nunnally Fails to Demonstrate the Her Protected Activity Caused any Adverse Action.**

23 Nunnally fails to meet the causation element necessary to maintain her claim.  Here,
24 there is simply no nexus between any public policy concern and plaintiff's decision to find a
25 new job.  There is no evidence that Nunnally's internal call to the Ethics Hotline triggered any
26 material adverse consequences.  Although she maintains her subjective belief that others treated

MOTION FOR SUMMARY JUDGMENT - 13
DWT 12055944v2 0060350-000020

Davis Wright Tremaine LLP
LAW OFFICES
1800 Bellevue Place · 10500 NE 8th Street
Bellevue, Washington 98004-4300
(425) 646-6100 · Fax: (425) 646-6199

her differently and, for example, did not offer her bagels or muffins nearly a year before she resigned, she cannot provide evidence that others' actions were motivated by retaliation. Furthermore, she identifies no incidents of possible retaliation after she filed her complaint with OSHA, covering the entire last five months of her employment.  Thus, she cannot meet the basic causation element of a wrongful termination claim.

### C. Nunnally's Failed to Timely Appeal her OSHA Retaliation Claim

Alternatively, Nunnally's wrongful discharge claim should be dismissed because her state law claim constitutes an untimely appeal of the 2006 dismissal of her OSHA claims. Nunnally fails to state a claim upon which relief can be granted because she is improperly appealing the April 2006 Department of Labor/OSHA decision and cannot now bring a stale claim for retaliation under Sarbanes-Oxley.

Sarbanes-Oxley allows an aggrieved party to assert a retaliation claim by either (1) filing an administrative complaint with the Department of Labor; or (2) initiating a lawsuit in federal court, but only if the Department of Labor has not issued within 180 days of the administrative filing.  18 U.S.C 1514A(b)(1).  The law requires that any such action "shall be commenced not later than 90 days after the date on which the violation occurs."  18 U.S.C. 1514A(2)(D).

Consistent with her right under the law, Nunnally commenced an administrative proceeding with OSHA (the agency within the Department of Labor designated to investigate Sarbanes-Oxley claims) to seek remedies for retaliation in August 2005.  Benton Decl., Exhibit 6.  Nunnally complained of a "hostile work environment specifically consisting of realigning your workgroup, changing the procedure for scheduling appointments as it applied to you, moving you to a different cubicle, hiring an additional sales engineer that made you fear for you job, and 'rifling' through your desk."  Benton Decl., Exhibit 7.

MOTION FOR SUMMARY JUDGMENT - 14
DWT 12055944v2 0060350-000020

Davis Wright Tremaine LLP
LAW OFFICES
1800 Bellevue Place · 10500 NE 8th Street
Bellevue, Washington  98004-4300
(425) 646-6100 · Fax: (425) 646-6199

OSHA conducted a formal administrative investigation. At the conclusion, OSHA issued its Findings and Order of Dismissal on April 6, 2006.[5] *Id*. Once OSHA issued its preliminary order or findings, Nunnally was required to file any objections and request a hearing within 30 days of receipt of the findings and preliminary order. 29 C.F.R. §1980.106(a). The regulations are clear that when a party fails to file a timely objection, the findings or preliminary order "shall become the final decision of the Secretary, ***not subject to judicial review.***" 29 C.F.R. 1980.106(b)(2) (Emphasis added). The Findings and Order clearly reinforced this point, stating "If no objections are filed, these Findings will become final *and not subject to court review.*" *Id* (Emphasis added). Nunnally did not appeal of the OSHA Order. The Order issued by the Department of Labor is now the final determination and is not subject to judicial review. 29 C.F.R. 1980.106(b)(2)  The Department of Labor has taken a strong position against allowing subsequent suits involving the same parties and claims: "The Secretary believes that it would be a waste of the resources of the parties, the Department, and the courts for complainants to pursue duplicative claims." Final Rule, 69 FR 52104, 2004 WL 1876043, *19 (2004).

Because Nunnally did not properly appeal the OSHA determination, her rights under Sarbanes-Oxley have extinguished. Furthermore, any new action pursuant to the whistleblower protections of Sarbanes Oxley are time-barred. The statute requires all claims to be filed within 90 days of the alleged retaliatory act. 18 U.S.C. 1514A(2)(D). Nunnally did not file this lawsuit until approximately 18 months after she left XO's employment.

Nunnally now seeks to relitigate her failed and stale claims by asserting a common law wrongful discharge claim that rests squarely on the public policy created by Sarbanes-Oxley. Congress and the Department of Labor established a clear and extensive process to provide order and predictability to such claims. The court should not permit Nunnally to circumvent

---

[5] Although OSHA's investigation took slightly longer than six months, Nunnally did not file a lawsuit as she was permitted to do under the statute given the delay.

MOTION FOR SUMMARY JUDGMENT - 15
DWT 12055944v2 0060350-000020

Davis Wright Tremaine LLP
LAW OFFICES
1800 Bellevue Place · 10500 NE 8th Street
Bellevue, Washington 98004-4300
(425) 646-6100 · Fax: (425) 646-6199

the Department of Labor's appeals process and the applicable statute of limitations. This court should dismiss her claim.

### V.    CONCLUSION

For the reasons above, XO requests that the Court summarily dismiss Nunnally's claim for constructive discharge in violation of public policy.

DATED this 20th day of November, 2008.

    Davis Wright Tremaine LLP
    Attorney for XO Communications

    By: */s/ Greg Hendershott*
      Greg Hendershott, WSBA No. 27838
      Boris Gaviria, WSBA No. 31251
      777 108th Avenue NE, Suite 2300
      Bellevue, WA 98004
      greghendershott@dwt.com
      Tel: 425.646.6100
      Fax: 425.646.6199

MOTION FOR SUMMARY JUDGMENT - 16
DWT 12055944v2 0060350-000020

CERTIFICATE OF SERVICE

I hereby certify that on the date below stated, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>   Jean Huffington
>   McKay Huffington & Tyler PLLC
>   14205 SE 36th Street, Suite 325
>   Bellevue, WA 98006-1505

DATED this 20th day of November, 2008.

>   */s/ Amanda M. McFadden*
>   Amanda M. McFadden

MOTION FOR SUMMARY JUDGMENT - 17
DWT 12055944v2 0060350-000020